# CHARLESTON.

OHIO VALLEY BANK *v.* C. S. MINTER *et al.*

(No. 6270)

Submitted October 15, 1929.   Decided October 22, 1929.
(Rehearing denied December 4, 1929.)

*N. D. Waugh,* for defendant in error.
*Chas. L. Estep,* for plaintiff in error.

LIVELY, JUDGE:

The question involved in this writ of error is whether a diamond ring worth about $1,000.00 owned by an execution debtor and worn habitually by her is subject to sale under the lien of the execution.

On May 27, 1926, the circuit court of Logan county rendered judgment in favor of Ohio Valley Bank against Nan D. Minter and others for the sum of $20,080.00. Execution was issued thereon the 8th day of the following November and went into the hands of the sheriff. In pursuance to section 4 of chapter 141 of the Code, the court, on April 6, 1927, directed a summons to be issued for defendant, Nan D. Minter, to appear before a commissioner in chancery to answer interrogatories which might be propounded to her concerning her estate subject to execution lien. On that day she reported by counsel that she then owned and was wearing a diamond ring which she had owned for a number of years prior to the rendition of the judgment and which she was then wearing as a part of her usual wearing apparel, and claimed the ring

as exempt from any process, because, it constituted a part of her usual and customary wearing apparel. It does not appear whether the ring was inherited, a gift, or acquired by purchase. The commissioner found that she owned the ring, that it was subject to the execution lien, and ordered that it be delivered to the sheriff and sold by him. The execution debtor excepted to the report but the trial court overruled the exception and confirmed the report. It is from that order of the circuit court, entered February 17, 1928, that this writ of error was awarded.

An execution in the hands of the proper officer is a lien on all the personal estate of the debtor from the time it goes into the officer's hands, although not levied on or capable of being levied on, except such estate as may have been listed and set apart as exempt from distress and levy under the provisions of law; and property in the hands of an innocent purchaser for value without notice of execution, as provided in section 2, chapter 141, Code. How then can she avoid the lien of execution? She does not attempt to exempt it under any provisions of our statutory law for there is no statute which exempts from levy of an execution wearing apparel or the like on the person of the judgment debtor, and it does not appear that she is a parent and therefore qualified to claim personal property exemption under section 23, chapter 41, Code. But she places her reliance for relief against the enforcement of the lien of the execution on the common law rule, that it is against public policy for an officer to search the person of the debtor, and take from him articles thereon found, which procedure on the part of the officer would tend to create breaches of the peace and disrupt good order and decorum of society. To sustain this proposition her counsel cites *Mack* v. *Parks,* 8 Gray (Mass.) 517, 69 Am. Dec. 267; *Maxham* v. *Day,* 16 Gray (Mass.) 213, 77 Am. Dec. 409. Those cases are to the effect that a sheriff holding an execution is not permitted to seize wearing apparel or other property on the person of the execution debtor, the reason therefor being that such procedure would tend to breaches of the peace and assaults. This was the reason at common law for the rule. These decisions have little application to this case, for the sheriff had not

attempted to levy on the diamond ring, and has in no way violated the person, or personal rights of the execution debtor. The procedure taken here is to ascertain the personal estate of the debtor subject to the lien of the execution, and is authorized by statute, sections 4 to 9, chapter 141 of the Code. By this statute if personal estate be found in the possession or under control of the execution debtor, he may be required to deliver it to the officer, and provision is made for carrying out such requirement, if necessary. This statutory method of reaching personal estate in the hands of the debtor subject to execution lien obviates the risk of personal strife and breaches of the peace between the sheriff and debtor and preserves good order and decorum.

Reliance upon the common law by an execution debtor to escape the lien of execution is rather precarious. The common law was rather harsh towards debtors, even putting them in jail when they were unable to pay, a drastic procedure which shocks the enlightened modern conscience, but it serves to illustrate the scant consideration given to an unfortunate debtor. At common law a man's clothing cannot be taken off his back in execution of a writ of fieri facias. *Sungolf* v. *Alford,* 3 Mee. & W. 253. The main reason for that rule, as above stated, is that such a taking would tend directly to collisions and breaches of the peace. But if clothing was not being worn it seems that at common law it could be levied upon and taken. Freeman, Executions, secs. 232 and 255. A lien of an execution at common law extended to all of the personal estate of the debtor, and our statute is but declaratory of the common law in that regard. It seems that the common law cared very little for the debtor, but cared more particularly for public tranquility. *Gorton* v. *Falkner,* 4 T. R. 565. The common law, if not changed by our constitution or laws, is in force in this state; and it may be conceded that an officer with an execution cannot levy on and take from the execution debtor wearing apparel on the person, or other article of personal adornment in actual use on the person. But that is not the situation before us, for the sheriff has neither levied nor attempted to levy on the diamond ring. The statute above cited by which personal property in the

possession and control of the debtor can be taken through the processes of the court would probably not extend to clothing in use, on the ground of public policy, a question which is not before us for decision; but we think it would extend to money, valuables on the debtor's person not necessary for comfort nor avocation, and above ordinary value. Otherwise, a debtor could withdraw his property subject to execution lien from creditors by converting his money or property into valuables carried about his person for ornament. It was stated in argument that if such a situation was presented the court would quickly reach the fraud, and require delivery of the valuables thus worn for apparent ornament; but on the other hand, such a holding would open the door to fraud, and fraud is not always easily proven. It is said by travellers that Mongolian women wear their entire wealth on their hair, while the supple Arab dancing girls wear their wealth in decorations on graceful necks and limbs. And feminine na-, ture, so dear to the hearts of men, is very much the same whether in the yurts of the Soyots of Mongolia, or in the brown stone fronts on Fifth Avenue in New York City. This observation has little relevancy to the legal question here involved.

In the evolution of English and American law, imprisonment for debt has gone into the discard, and statutes have been passed which allow the debtor to claim exemptions from the lien and levy of an execution. It may be observed that our statute exempting personal property from execution to the extent of $200.00 value does not, in specific terms, include wearing apparel. Many of the statutes of our sister states do so. And there is quite a diversity of opinion among the courts as to what constitutes "wearing apparel". This diversity has arisen in the interpretation of statutes exempting wearing apparel from seizure and sale; in the interpretation of wills; and under the bankruptcy statute. In *Bank* v. *Robinson*, (Tex.) 124 S. W. 177, 179, a diamond ring worn on the finger was held to be exempt under a statute exempting wearing apparel from execution; under a similar statute exempting all wearing apparel from execution, rings and jewelry usually worn on the person and for that reason out of the

power of the sheriff to levy on, was held to be liable for debt, and not to be "wearing apparel" under the statute. *Frazier* v. *Barnum,* 19 N. J. Eq. 316; a watch attached to the person by a silk guard around his neck was held to be exempt from seizure by a sheriff on the ground that that seizure would tend to a breach of the peace, *Mack* v. *Parks, supra;* and a diamond ring worth several hundred dollars worn by a bankrupt was held not to be exempt under the statute as "wearing apparel"; *in re Grimmell,* 155 Fed. 551, 553. And likewise, in *Towns* v. *Pratt,* 33 N. H. 345, a breastpin was not considered as wearing apparel under the statute which exempted wearing apparel necessary for the debtor and his family; and in *Rivas* v. *Noble,* 241 Fed. 673, it was held that a diamond ring worth $650.00 being worn by a bankrupt was not exempt, in the absence of a state statute, or decisions supporting the claim of exemption; and in the absence of an authentic statement of the common law which allowed the debtor to retain such an article as exempt as an article of personal adornment for luxury. These cases cited illustrate the contrariety of opinion under statutes similar in nature as to what constitutes "wearing apparel". It may be deducted from these cases cited, and others too numerous to cite, that the best rule to determine what is meant by wearing apparel under such statutes is that, the phrase "wearing apparel" includes all of the articles of dress generally worn by persons in the locality and conditions of life of the claimant including whatever is necessary to decent appearance, and protection to the changes of weather, and also to what is reasonably proper and customary in that community in the way of ornaments. 40 Cyc. p. 875, Editor's note.

We conclude, that we have no statute exempting wearing apparel from the lien of a fieri facias; that the common law against forcible taking of such articles from the person remains with us, not having been changed by our laws expressly or impliedly, and that our statute, above set out, furnishes a procedure by which personal estate in the possession of the execution debtor may be reached by a creditor without the risk of personal conflict and breaches of the peace between the debtor and the officer. Moreover, if we take the view that it is

against public policy to sequester wearing apparel under the above cited statutory measure, the rule to be followed, deducible from the decisions above referred to, would compel an affirmance of the order of the trial court; because the record is silent as to the general custom of wearing expensive jewelry in the claimant's locality among persons similarly situated in society. It does not appear that the wearing of such a ring is reasonable and customary in the way of ornament in claimant's locality among persons in like station of life with her. We find nothing in the record on which we can base a reversal; therefore, the judgment will be affirmed.

*Affirmed.*