**CHICAGO PNEUMATIC TOOL COMPANY, Plaintiff,**

**v.**

**O.V. STONESTREET and Stonestreet Production Service, Inc., Defendants.**

**Civ. A. No. 83–A034.**

United States District Court,
S.D. West Virginia,
Parkersburg Division.

Sept. 17, 1985.

Daniel R. Schuda, Steptoe & Johnson, Charleston, W.Va., for plaintiff.

Richard H. Brumbaugh, Spencer, W.Va., for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending before the Court in the above styled action is the Plaintiff's motion for a reference to a magistrate and other proceedings in aid of execution.

In bringing this motion before the Court, the Plaintiff invokes the provisions of *Rule* 69 of the Federal Rules of Civil Procedure.[1]

---

**1.** Paragraph (a) of *Rule* 69 reads as follows: "Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in

Paragraph (a) of that rule provides generally that the procedures for execution on a judgment are to be governed by the law of the state in which the district court is held. The paragraph also provides that discovery in aid of execution may be held under the federal rules or in accordance with state law. Hence, *Rule* 69(a) can be read as dealing with (1) execution procedures generally and (2) discovery in aid of execution.

## I. *Discovery in Aid of Execution*

 In regard to discovery, the Plaintiff refers to *W.Va.Code*, § 38–5–1. That section of the West Virginia Code provides that a debtor can be brought before a commissioner in chancery[2] "to answer upon oath such questions as shall be propounded at such time and place by counsel for the execution creditor, or by the commissioner." In essence, the section provides for a deposition. A similar type of deposition could just as easily have been requested under the federal rules. The execution creditor, however, has the choice of state law or federal procedure in pursuing discovery in aid of execution. *El Salto, S.A. v. PSG Co.*, 444 F.2d 477, 484 n. 3 (9th Cir.1971); *see also Ranney-Brown Distributors v. E.T. Barwick*, 75 F.R.D. 3, 5 (S.D. Ohio 1977). Conceivably, an advantage to the state route can be found in the judicial officer's ability to join in the questioning during the deposition.

As mentioned, the West Virginia statute provides for a commissioner in chancery. Obviously, the federal court system does not have such a commissioner.[3] With this in mind, the Plaintiff has proposed that the Court designate a federal magistrate to serve as a federal parallel to the state position. Moreover, the Plaintiff has suggested that the magistrate sit as a special master.

*Rule* 53(b) of the Federal Rules of Civil Procedure provides that a reference to a master is to be the exception and not the rule. Indeed, the rule requires a showing of some exceptional condition to support a reference in a nonjury case. In jury trials, references are only to be made when the issues are complicated. In designating a magistrate to serve as a master, however, these special showings can be dispensed with upon the consent of the parties. The record here does not reflect any bilateral consent. It may not be necessary; *Rule* 53(b) seems to be concerned with references during trial, be it a jury trial or one to the Court. The proposed reference before the Court would affect only post-trial issues. Nevertheless, as for discovery purposes, the Court does not feel compelled to resort to a *Rule* 53 designation. As mentioned, the discovery procedure requested pursuant to *W.Va.Code*, § 38–5–1 is in the nature of a deposition. The Federal Magistrate Act explicitly gives a federal magistrate the power to take a deposition. 28 U.S.C. § 636(a)(2). Moreover, the local rules for practice before magistrates provide that a magistrate "[c]onduct examination of judgment debtors, in accordance with *Rule* 69 of the Federal Rules of Civil Procedure." *Rule* 6(i), Local Rules of Practice and Procedure Before United States Magistrates. Thus, resort to *Rule* 53 is unnecessary.

## II. *Proceedings In Aid of Execution*

 In its motion, the Plaintiff also requests that in appearing before the "commissioner," the Defendant be required

---

proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. In aid of the judgment or execution, the judgment creditor or his successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held."

2. *Rule* 53 of the West Virginia Rules of Civil Procedure drops the words "in chancery" because of consolidation of law and equity.

3. Without insinuating that the position was similar to the state position, the Court notes that the office of United States Commissioner was abolished by the Federal Magistrates Act of 1968. Magistrates thereafter took the place of commissioners.

"[t]o convey or assign to the United States Marshal for the Southern District of West Virginia, such money, bank notes, securities, evidences of debt, other personal property, choses in action or other intangible personal property as may be ordered by the said commissioner for the enforcement and payment of the judgment, including interest and costs, outstanding in the above matter."

Although not specifically referred to by the Plaintiff, *W.Va.Code*, § 38–5–4 deals with the content of the above set forth request.[4] In importing this state practice into the federal system, the Court perceives at least the appearance of difficulty in a constitutional sense.

The Plaintiff's request, if granted, would have a federal magistrate affecting the property rights of the parties. There has been much concern expressed in the case law about the power which can constitutionally be delegated to a magistrate. The Supreme Court has noted that witnesses testifying before Congress on the then considered Federal Magistrate Act "expressed some fear that Congress might improperly delegate to magistrates duties reserved by the constitution to Article III judges." *Matthews v. Weber*, 423 U.S. 261, 269, 96 S.Ct. 549, 553–54, 46 L.Ed.2d 483 (1976). Parties to litigation have been said to have a due process right to have "cases" or "controversies" determined by Article III judges. *TPO, Inc. v. McMillen*, 460 F.2d 348 (7th Cir.1972).

It was a concern based upon constitutional sensitivity which led Congress to provide for trials at the magistrate level only if both parties consented. 28 U.S.C. § 636(c).[5] Such was the concern for consent that there was included language to the effect that a district judge or magistrate should not try to coerce the parties to agree to a reference. In certain instances, voluntariness on the parties was also made a prerequisite for reference to a magistrate as a master under *Rule* 53.

As mentioned, the Court is reluctant to invoke *Rule* 53 because of the arguable requirement of consent in this instance. The decision not to rely upon *Rule* 53, however, does not preclude this Court from referring the matter to a magistrate; the statute is "clear that not every reference, for whatever purpose, is to be characterized as a reference to a special master." *Matthews*, 423 U.S. at 273, 96 S.Ct. at 555–56. Moreover, excluding paragraph (c), which deals with trials before magistrates, there appears to be authority elsewhere in section 636 for the type of reference the Plaintiff seeks. Paragraph (d) of section 636 provides in part that "[a] magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3).

This blanket language was inserted, according to the Supreme Court, as a result of the fear that a district court might delegate too much power to a magistrate. Its effect, however, would seem to be more inclusive than exclusive. The language cannot be said to exclude much of substance because of the thoroughness with which Congress addressed the constitutional issues in the remainder of section 636. Paragraph (c) requires consent before civil

---

**4.** *W.Va.Code*, § 38–5–4 reads, in pertinent part, as follows:

"[A]ny money, bank notes, securities, evidences of debt, or other personal estate, which it may appear by such examination are in the possession or under the control of such debtor, though in the hands of some other person, shall be delivered by him, as far as practicable, to the same officer, or by such other person and in such manner as may be ordered by the commissioner; and any chosen action or other intangible personal property shall be assigned or conveyed to the officer."

**5.** The Third Circuit in *Wharton-Thomas v. U.S.*, 721 F.2d 922 929–30 (3d Cir.1983), gave four reasons why section 636(c) did not violate Article III:

"1. The reference to a magistrate is consensual;

2. The district judge has the power to vacate the reference;

3. The magistrate is appointed by the district judges, is a part of the district court, and is specially designated to try cases;

4. The parties have a right of appeal to a district judge or the Court of Appeals."

cases, whether jury or nonjury, can be tried before a magistrate. Under paragraph (b) a magistrate can hear and determine pre-trial matters, but cannot decide a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. The exclusion of these matters can be seen as a reaction to the thinking that an Article III judge should be rendering the final judgments which these types of motions call for.[6] A magistrate can, however, submit proposed findings of fact and recommendations for disposition to the judge.

With this framework, the Court now turns to the type of relief requested here by the Plaintiff. The Plaintiff has requested that in the reference to the magistrate, the magistrate be given the power to order the execution debtor to assign personal property to the United States Marshal. Such an order would not run afoul of any constitutional limitations associated with the use of a magistrate. First, a "case" or "controversy" will not be before the magistrate. The case here has already been tried to judgment by this Court. The entry of judgment was made by this Court. The trial stage having already passed, the magistrate will be merely serving to assist in the execution of a valid judgment. Second, by any order requiring the execution debtor to transfer property to the Plaintiff, the magistrate will only be facilitating what the judgment entered by this Court otherwise would do. Section 1962 of Title 28 provides that "[e]very judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State...." W.Va.Code, § 38–4–8, in turn, provides that a writ of execution shall be a lien on all personal property of the judgment debtor from the time it is delivered to the sheriff to be executed. In the federal system, the U.S. Marshal is charged with the power to execute, 28 U.S.C. § 569, and he has the same powers as a state sheriff in executing the laws of the United States. 28 U.S.C. § 570. Therefore, from the time the writ of execution is issued to the United States Marshal, a lien is placed on all personal property of the execution-debtor. The magistrate is merely placed between the Marshal and the debtor to ameliorate a confrontational situation. As the West Virginia Supreme Court of Appeals said in *Ohio Valley Bank v. Minter*, 108 W.Va. 58, 61, 150 S.E. 366 (1929), "[t]his statutory method of reaching personal estate in the hands of the debtor subject to execution lien obviates the risk of personal strife and breaches of the peace between the sheriff [or Marshal] and debtor and preserves good order and decorum." Such is the West Virginia scheme which the Plaintiff has elected to use in this instance.

There is one final procedural problem with bringing the judgment debtor before a magistrate. Whereas the West Virginia statutory scheme is based upon a fifty-five county system, the federal system consists of just two districts. This obvious difference creates doubt as to how service is to be made and where the debtor is to be interrogated. As to the former, process should issue in the manner usually employed by federal courts. As to the latter, the state scheme gives the execution creditor the option of deposing the debtor in either the judgment county or the execution debtor's county of residence. *State ex rel Shamblin v. Dostert*, 163 W.Va. 361, 255 S.E.2d 911 (1979). This choice is possi-

---

**6.** *See U.S. v. Flaherty,* 668 F.2d 566 (1st Cir.1981) ("[O]nly an Article III court, not a magistrate, may constitutionally enter a final judgment. A magistrate is, therefore, authorized to make only those determinations that do not constitute final judgments."); *Glover v. Alabama Board of* *Corrections,* 660 F.2d 120 (5th Cir.1981) ("A decision without consent by a magistrate, a non-Article III judge, would undermine this objective of the Constitution and might violate the rights of the parties.").

ble, of course, because a commissioner can be found in either county. Because the federal system is not based on counties, a federal magistrate may or may not be present in a given county. Therefore, this Court deems it advisable to alleviate any confusion by designating Charleston, West Virginia—a city in which a magistrate sits—as the place of interrogation.[7]

### III. *Summary*

Accordingly, the Court hereby appoints Magistrate Jerry D. Hogg to serve as a "commissioner" pursuant to *Rule* 69 and *W.Va.Code,* § 38–5–1.

The Court directs the Clerk, upon the written request of the Plaintiff and pursuant to *Rule* 69 of the Federal Rules of Civil Procedure and *W.Va.Code,* §§ 38–5–1 and 38–5–4, to issue execution in the above matter as to the judgment entered in favor of the Plaintiff, Chicago Pneumatic Tool Company, and against the Defendant, O.V. Stonestreet. The Clerk is also directed to issue a summons to O.V. Stonestreet to appear before the appointed magistrate at such time and place as the summons directs to answer upon oath such questions as shall be propounded by counsel for the Plaintiff, or by the said magistrate, and to convey or assign to the United States Marshal for the Southern District of West Virginia such money, bank notes, securities, evidences of debt, other personal property, choses in action or other intangible personal property as may be ordered by the said commissioner for the enforcement and payment of the judgment, including interest and costs, outstanding in the above matter.

The Court further directs the Clerk, upon the written request of the Plaintiff, to issue a summons with service upon the Secretary of State of West Virginia to Stonestreet Production Services, Inc.; Stonestreet Lands Company; Stonestreet-Charlois Ranch, Inc.; Lydia Energy, Inc.; Elmore Production Services, Inc.; and Twin Oaks,

Inc.; all alleged by the Plaintiff to be debtors of O.V. Stonestreet, to appear before the said magistrate pursuant to *Rule* 69 and *W.Va.Code,* § 38–5–1, and to bring all books and records (1) reflecting any ownership interest had by O.V. Stonestreet in the said corporations, (2) reflecting any indebtedness or obligation owed by the said corporations to O.V. Stonestreet and (3) reflecting payments made to O.V. Stonestreet during the year 1985.

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record.

---

7. In *Anderson v. Tucker,* 68 F.R.D. 461 (D.Conn. 1975), the court noted the propriety of modifying state procedure to conform with federal practice.

"*Rule* 69(a), Fed.R.Civ.P., makes applicable state procedural rules for the enforcement of judgments.... These state rules are to be applied in a common sense manner, of course, and those which make sense only when applied to state courts need not be imported into federal practice."